**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER VAUGHN,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **EP-20-CV-00256-KC-ATB** |
| | § | |
| **OFFICER ORTIZ,** | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION
OF THE MAGISTRATE JUDGE**

On this day, the Court considered Defendant's "12(b)(6) Motion to Dismiss Defendant in His Official Capacity,"[1] filed by Defendant Officer Ortiz ("Ortiz") on February 25, 2021.  (ECF No. 18).  The matter was referred to this Court pursuant to the Standing Order referring prisoner civil rights cases to United States Magistrate Judges.

For the reasons set forth below, the Court **RECOMMENDS** that Defendant's Motion be **GRANTED**, as set forth herein.

# I.   BACKGROUND

### a.   Procedural Background

Plaintiff Christopher Vaughn ("Vaughn"), proceeding *pro se* and *in forma pauperis*, filed his Complaint on October 9, 2020, alleging claims against two different Defendants based upon his time in custody at the El Paso County Jail Annex ("EPCJA") as a pretrial detainee.  (ECF No. 3).  After a Report and Recommendation from this Court (ECF No. 6), the District Court dismissed all of Vaughn's claims on February 8, 2021, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), except for

---

[1] The Court notes that Plaintiff Christopher Vaughn has brought suit against Ortiz "in his individual and official capacity."  (ECF No. 2, p. 3).  The Court further notes that Defendant Officer Ortiz's Motion only addresses the claims against him in his official capacity.

Vaughn's excessive use of force claim against Ortiz in his individual and official capacities.  (ECF No. 12, p. 4).  On February 25, 2021, Ortiz filed the instant Motion seeking dismissal of Vaughn's claims against him in his official capacity.  (ECF No. 18).  To date, Ortiz's Motion remains unopposed as Vaughn has not filed a response.

### b.      Factual Background[2]

Vaughn is a pretrial detainee in El Paso County, Texas and is currently being held at the EPCJA.  (ECF No. 3, p. 2).

In his Complaint, Vaughn contends that he has been subjected to cruel and unusual punishment during his time in custody.  (ECF No. 3).  Vaughn alleges that on September 6, 2020, Officer Ortiz made verbal threats of physical and sexual violence towards Vaughn during Ortiz's "wing check."  (*Id.* at p. 3-4).  Subsequently, Ortiz entered Vaughn's pod and told him to "go to [his] cell and get naked" and repeated his sexual threats.  (*Id.* at p. 4).  While Vaughn was still outside his cell, Ortiz entered Vaughn's cell, grabbed Vaughn's bedsheet, and repeated his sexual threats.  (*Id.*).  When Vaughn backed away from his cell, Ortiz made threats of physical violence.  (*Id.*).  Vaughn then told Ortiz "I'm not trying to fight you but I will defend myself" before Ortiz "rushed [Vaughn] swinging."  (*Id.*).  Vaughn "kept trying to push [Ortiz] away," but Ortiz "kept trying to hit [Vaughn] more."  (*Id.*).  After Vaughn pushed Ortiz away, Ortiz "started again" to "swing on" Vaughn.  (*Id.* at p. 5).  When other officers arrived, Vaughn told them he was trying to get Ortiz to stop attacking him and that he did not want to fight Ortiz.  (*Id.*).  The other officers grabbed Vaughn and restrained his arms.  (*Id.*).  "While [Vaughn] was having [his] arms held by several officers[, Ortiz] hit [Vaughn] in the face hard splitting [sic] [his] tooth and lips."  (*Id.*).  The officers holding Vaughn turned him away from Ortiz, which Vaughn believes was to shield him,

---

[2] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

and they asked Vaughn to lay down.  (*Id.*).  Vaughn complied, and the officers "placed cuffs and shackles" on Vaughn.  (*Id.*).

## II.    LEGAL STANDARDS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of a complaint when a defendant shows that the plaintiff has failed to state a claim upon which relief can be granted.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual matter contained in the complaint must allege actual facts, not legal conclusions masquerading as facts.  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555) ("Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we 'are not bound to accept as true a legal conclusion couched as a factual allegation.'").

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief."  *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted).  A complaint states a "plausible claim for relief" when the factual allegations contained therein infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'"  *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

Furthermore, *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all

reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam). However, even a pro se complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam) (citation omitted).

## III.   ANALYSIS

### a.    Vaughn has Not Named the Proper Defendant and has Failed to State a Claim for Municipal Liability

In his Complaint, Vaughn contends that Ortiz "at all times . . . acted under color of state [l]aw [and] therefore is sued in his individual and Official Capacity." (ECF No. 3, p. 2). In his Motion, Ortiz argues that Vaughn's claim against him in his official capacity is "equivalent [to a] suit[] against the governmental entit[y] that employ[s him]." (ECF No. 18, p. 3). Further, Ortiz argues that Vaughn's Complaint "fail[s] to plead sufficient facts to state a claim to relief that is plausible on its face," because it "do[es] not allege [that] any conduct was the result of an official El Paso County policy or custom." (*Id.* at p. 3-4) (internal quotes and citations omitted).

"A claim against an officer in his official capacity is treated as a claim against the municipality." *Jordan v. Brumfield*, 687 F. App'x 408, 415 (5th Cir. 2017); *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). In his Complaint, Vaughn identifies Ortiz as an "Officer/Employee of El Paso County Jail Annex . . . ." (ECF No. 3, p. 2). Ortiz contends that EPCJA officers are employed by El Paso County. (ECF No. 18, p. 3). Therefore, the Court finds that any claims against Officer Ortiz in his official capacity shall be construed as claims against El Paso County. *See generally Feliz v. El Paso County*, 441 F. Supp. 3d 488, 494 n.2 (W.D. Tex. 2020).

Assuming, *arguendo*, that Vaughn had named the proper defendant, El Paso County, in his Complaint, Defendant Ortiz argues that "[t]he County of El Paso should not be held liable for the alleged cruel-and-unusual punishment claims against Officer Ortiz" (ECF No. 18, p. 3).

Municipalities cannot be held liable under 42 U.S.C. § 1983 based upon a theory of vicarious liability. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.*; *see Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009) ("[A municipality] is liable only for acts directly attributable to it 'through some [sort of] official action or imprimatur.'") (quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001)). Municipality liability is "limited to acts that are, properly speaking, acts 'of the municipality' – that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986).

Under Section 1983, municipal liability for a policy or custom claim requires proof of: (1) a policy maker; (2) an official policy or custom; and (3) a violation of constitutional rights of which the "moving force" is the official policy or custom. *Piotrowski*, 237 F.3d at 578. Furthermore, only where a municipality adopts a policy that violates a constitutional right, or fails to adopt a policy preventing the violation of a constitutional right "evidenc[ing] a 'deliberate indifference' to the rights of its inhabitants[,] can such a shortcoming be properly thought of as a [municipal] 'policy or custom' that is actionable under § 1983." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Therefore, to establish municipal liability, a plaintiff must establish both municipal causation and culpability. *See Snyder v. Trepagnier*, 142 F.3d 791, 795-96 (5th Cir. 1998) ("Plaintiffs seeking to win under this theory must first prove a direct causal link between the

municipal policy and the constitutional deprivation; they then must establish that the city consciously enacted a policy reflecting 'deliberate indifference' to the constitutional rights of its citizens.").

Moreover, there are multiple ways in which a custom or policy can be found to exist.  First, a custom or policy can stem from a single act by an official with final policymaking authority.  *See Pembaur*, 475 U.S. at 481-83 (establishing that isolated actions or decisions by a municipal policymaker with "final policymaking authority" may create municipal liability).  Second, the custom or policy can also be a policy statement formally announced by an official policymaker.  *See Zarnow v. City of Wichita Falls*, 614 F.3d 161, 168 (5th Cir. 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc) (per curiam)).  Finally, a custom or policy can also be demonstrated through a "persistent[,] widespread practice of [municipal] officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Zarnow*, 614 F.3d at 168; *see Webster*, 735 F.2d at 841.  "For a custom or practice to be considered a de facto policy, however, a plaintiff must allege facts 'showing a pattern of abuses that transcends the error made in a single case.'" *Lozano v. Ortega*, No. EP-14-CV-239-KC, 2014 WL 6611595, at *15 (W.D. Tex. Nov. 19, 2014) (quoting *Piotrowski*, 237 F.3d at 582).  "[I]solated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578.

Vaughn's Complaint fails to allege a custom or policy that stems from a single act by an official with final policymaking authority or the existence of an official policy adopted by El Paso County or the EPCJA.  A plaintiff seeking to establish municipal liability under *Monell* based upon an official policy "may point to a policy statement formally announced by an official

policymaker." *Zarnow*, 614 F.3d at 168.  In his Complaint, Vaughn makes no such allegations. Accordingly, the Court finds that Vaughn has not alleged the existence of an official policy "announced by an official policymaker." *Id.*

Further, the Court finds that Vaughn has failed to allege the existence of a custom within the EPCJA.  Rather than relying on an official policy, a "plaintiff may demonstrate a 'persistent widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents the municipal policy.'" *Id.* (quoting *Webster*, 735 F.2d at 841).  However, "to plead a practice so persistent and widespread as to practically have the force of law, a plaintiff must do more than describe the incident that gave rise to his injury." *Peña v. City of Rio Grande City*, 879 F.3d 613, 622 (5th Cir. 2018) (internal quotes and citation omitted).

In *Peña v. City of Rio Grande City*, "the only 'specific fact' in the complaint [was] the single incident in which Peña was involved." *Id.*  The Fifth Circuit held that the plaintiff's allegations were "conclusional and utterly devoid of factual enhancements." *Id.* (quotation marks omitted).  Similar to *Peña*, Vaughn's Complaint is devoid of any facts other than those relating to the single isolated incident giving rise to his alleged injuries.  However, "'[i]solated violations are not the persistent, often repeated constant violations that constitute custom and policy' as required for municipal section 1983 liability." *Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995) (quoting *Bennet v. City of Slidell*, 728 F.2d 762, 768 n.3 (5th Cir. 1984)).  Therefore, the Court finds that Vaughn has failed to allege a custom in his Complaint sufficient to establish municipal liability under *Monell*.

The Court also finds that Vaughn's allegations contained in his Complaint do not allege the existence of a policymaker, as required to establish municipal liability.  In *Peña*, the Fifth

Circuit explained that "because the identity of the policymaker is a legal question, courts should not 'grant motions to dismiss for failing to plead [a] specific identity.'  Rather, 'the complaint need only allege facts that show an official policy, promulgated or ratified by the policymaker, under which the municipality is said to be liable.'"  *Peña*, 879 F.3d at 622-23 (quoting *Groden v. City of Dallas*, 826 F.3d 280, 284-85 (5th Cir. 2016)).  The Fifth Circuit then held that the "complaint invite[d] no more than speculation that any particular policymaker, be it the chief of police or the city commissioner, knew about the alleged custom" and found that the plaintiff had failed to allege a policymaker.  *Id.* at 622.  Just as in *Peña*, Vaughn's Complaint does not suggest the existence of a policymaker.  Therefore, the Court finds that Vaughn has not named the proper defendant for a municipal liability claim and that Vaughn has failed to state a claim for municipal liability. Accordingly, the Court recommends that Ortiz's Motion to Dismiss Vaughn's claims against Ortiz in his official capacity be granted.

### b.      Vaughn Failed to Respond to Ortiz's Motion to Dismiss

The Court notes that Vaughn did not file a response to Ortiz's Motion to Dismiss.  Pursuant to Local Rule 7(e)(2), "[i]f there is no response [to a motion] filed within the time period prescribed by this rule, the court may grant the motion as unopposed."  W.D. Tex. Civ. R. 7(e)(2).  Ortiz filed his Motion to Dismiss on February 25, 2021.  (ECF No. 18).  Vaughn failed to file a response on or before March 11, 2021.  *See* W.D. Tex. Civ. R. 7(e)(2) ("A response to a dispositive motion shall be filed not later than 14 days after the filing of the motion.").  Accordingly, the Court finds that Vaughn has failed to file a timely response to Ortiz's Motion to Dismiss, and therefore, the Court recommends that Ortiz's Motion to Dismiss be granted as unopposed.

## IV.    CONCLUSION

Based on the foregoing, the Court **RECOMMENDS** that Defendant's "12(b)(6) Motion

to Dismiss Defendant in His Official Capacity" be **GRANTED**.

**SIGNED** this 19th day of March, 2021.

_____
**ANNE T. BERTON**
**UNITED STATES MAGISTRATE JUDGE**

**<u>NOTICE</u>**

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**